**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CHANEL RENEE RICE** | : | **CIVIL A. NO. _____** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NEW HAVEN BOARD OF EDUCATION,** | : | |
| **FRANK C. COSTANZO,** *in his individual* | : | **JURY TRIAL DEMANDED** |
| *and official capacity***, and** | : | |
| **VAL-JEAN BELTON,** *in her individual* | : | |
| *and official capacity* | : | |
| **Defendants.** | : | **MARCH 17, 2017** |

## I.      INTRODUCTION

1.      Through this action, Plaintiff Chanel Renee Rice challenges the unlawful and

retaliatory conduct of Defendants, New Haven Board of Education, Frank C. Costanzo and Val-

Jean Belton, in violation of the Fourteenth Amendment of the U.S. Constitution, Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Title IX of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000d et seq., as well as the Connecticut Fair Employment

Practices Act, Conn. Gen. Stat. § 46a-60 et seq.

## II.      PARTIES

2.      Plaintiff, Chanel Renee Rice (hereinafter "Rice"), is an individual residing in

Meriden, Connecticut. Rice is an African-American female.

3.      Defendant New Haven Board of Education (the "Board") is a board of education

established pursuant to Connecticut General Statutes § 10-240 et seq., which operates and

maintains the New Haven Public Schools, including the Cooperative Arts and Humanities High

School ("Co-Op Arts & Humanities"). The Board has a principal place of business at

54 Meadow Street in New Haven, Connecticut. The Board employs more than 50 people and is

an employer subject to the requirements of Title VII of the Civil Rights Act of 1964, as amended, as well as the Connecticut Fair Employment Practices Act.

4.      Defendant Frank C. Costanzo is an individual residing in Madison, Connecticut. At all times relevant to this complaint, Costanzo was employed by the Board as the principal of Co-Op Arts & Humanities. As principal, Costanzo had the responsibility and authority to oversee the welfare of his staff, and had immediate responsibility for the implementation of policies and procedures governing the school, including those related to sexual harassment and discrimination. Costanzo is being sued in his individual and official capacity.

5.      Defendant Val-Jean Belton is an individual residing in Hamden, Connecticut. At all times relevant to this complaint, Belton was employed by the Board as either the assistant principal, interim principal or principal at Co-Op Arts & Humanities. As assistant principal, Belton was also the Title IX coordinator for the school, responsible for receiving complaints of sexual harassment and forwarding them to the Board's human resources director for investigation. Belton is being sued in her individual and official capacity.

6.      At all times relevant to this Complaint, both Costanzo and Belton were agents and/or employees of the Board, acting or failing to act within the scope, course and authority of their employment and their employer.

7.      At all times relevant to this Complaint, both Costanzo and Belton acted under color of state law.

## III.    JURISDICTION

8.      This Court has subject matter jurisdiction over this matter because it presents federal questions under 28 U.S.C. § 1331, and Rice's state law claims are properly before this Court under 28 U.S.C. § 1367.

9.      Rice has previously exhausted all administrative remedies relating to the claims asserted herein. On December 8, 2015, Rice filed a claim alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-58 et seq. with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and U.S. Equal Employment Opportunity Commission ("EEOC"), designated as CHRO No. 1630298 and EEOC Nos. 16A-2016-00582. On January 26, 2017, the EEOC issued a right to sue letter relating to this claim.

10.     Rice subsequently filed a separate claim alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-58 et seq. with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and U.S. Equal Employment Opportunity Commission ("EEOC"), designated as CHRO No. 1730092 and EEOC Nos. 16A-2016-01854. On December 19, 2016, the CHRO issued releases of jurisdiction relating to said claim. On January 26, 2017, the EEOC issued a right to sue letter relating to this claim.

## IV.    BACKGROUND

11.     The Board supervises and operates the New Haven Public Schools. It is a recipient of federal funding under Title VI.

12.     Rice has been employed by the Board as a school counselor since 2009. In September 2014, she began working as thee lead counselor at Co-Op Arts & Humanities. At the time, Costanzo was the principal and Belton was the assistant principal.

13.     Beginning shortly after Rice arrived at Co-Op Arts & Humanities, Costanzo began making sexual advances toward Rice by emails, phone calls and text messages.

14.     The frequency of Costanzo's conduct increased. Among other things, Costanzo asked Rice why she wasn't married; made unwanted comments about her physical appearance; told her that he was attracted to her; told her that it was hard to keep his feelings private; told her that she was special; and said that if he were not her boss or still married, they would be romantically involved.

15.     In several of the messages, Costanzo reminded Rice that he was her boss. In response, Rice continually told him that she was not interested in him and she wanted to keep their relationship professional. The text messages and phone calls came from a variety of cell phones, including what Rice later learned was a disposable cell phone.

16.     The e-mails and text messages took place beginning in September 2014 and continuing into June 2015. During the same time frame, Costanzo also contacted third parties to express his attraction to Rice, even telling other people that he loved Rice.

17.     On or about October 10, 2014, over the long Columbus Day weekend, Costanzo repeatedly called, sent text messages and emailed Rice with inappropriate sexual comments and made sexual advances towards her.

18.     On or about October 14, 2014, upon returning to work, Rice informed then-assistant principal Belton of Costanzo's inappropriate sexual advances. At the time, Belton was also Co-Op Arts & Humanities' Title IX coordinator, meaning that under the Board's sexual harassment policy, she was responsible for forwarding any complaints against an adult at the school to the Board's director of human resources within one day of receipt. Belton did not report Rice's complaint to the Board's human resources department or to any other person.

19.     Following that initial report, Rice repeated her discomfort and fear to Belton about Costanzo's conduct during in-person discussions, text messages and emails. Belton

instructed her to block Costanzo from her cell phone and to stop all non-school communication. Belton did not report Rice's repeated complaints to the Board's human resources department or to any other person.

20.     On or about December 11, 2014, at a staff Christmas party, Costanzo's behavior advanced to unwanted physical contact. At the party, Costanzo draped himself across Rice's lap and repeatedly expressed his attraction to Rice.

21.     On or about December 16, 2014, at Rice's request, Belton held a meeting with Rice and Costanzo to discuss Costanzo's behavior. During the meeting, Costanzo claimed that he was drunk during the party and could not remember anything about his behavior. The meeting was not documented and no action was taken. Again, Belton did not report Rice's complaint to the Board's human resources department or to any other person.

22.     Someone made an anonymous complaint to the Board's human resources department about Costanzo's behavior at the party. Costanzo was interviewed as a result of the complaint, and Costanzo identified Rice as someone who may have made the complaint and Belton as a witness. Belton was also interviewed.

23.     As a result of the anonymous report and interviews, Damaris Rau, then the executive director of schools for the Board, asked Belton to ask Rice if she "felt comfortable" in the school building. Rice told Belton that she did not feel safe or comfortable being left alone with Costanzo at any time.

24.     Pursuant to the Board's sexual harassment policy, the human resources department was required to initiate an investigation into the complaint promptly. Rau's indirect question to Belton was the only inquiry. No investigation was conducted; no action was taken against Costanzo; no one from the Board ever contacted Rice directly about the matter.

25.     For a short time, Costanzo's harassment ceased. But in February 2015, when Belton was away from the school because of her father's death, he began contacting Rice again. Costanzo would also visit Rice's work area, in the guidance office, pretending to discuss work matters but quickly digressing into personal matters.

26.     On one occasion, Costanzo entered into Rice's office, said nothing and stared intently at Rice for a period of time. The behavior made Rice uncomfortable and afraid for her safety until she was able to escape.

27.     On or about June 10, 2015, Costanzo again entered Rice's office. He refused to leave despite Rice's repeated requests, finally exiting only when Belton keyed in to the office suite. Rice immediately informed Belton about what had occurred, and Belton told Rice to gather her personal items and to stay with Belton for the remainder of the day.

28.     Belton later admitted that she saw Costanzo leaving Rice's office, but stated that she did not discuss the incident with Rice because "I don't mind people's business."

29.     In July 2015, Belton told Rice that she was "upset" that the superintendent had questioned her about Rice's harassment complaints. Belton told Rice that if she had a problem, she should "take it downtown."

30.     Costanzo resigned from his position in September 2015. Belton became the interim principal at Co-Op Arts & Humanities, and eventually assumed the position permanently.

31.     In or around September 2015, when Rice informed Belton that she would be consulting with an attorney about the harassment she had endured over the past year, Belton responded by threatening Rice, telling her to "prepare for them to air your dirty laundry."

32.     Rice filed a claim of discrimination with the CHRO and EEOC on or about December 8, 2015.

6

33.     Following the filing of Rice's complaint, Belton became increasingly hostile toward Rice. That hostility increased during the 2015-2016 school year. Rice was suddenly treated unfairly and differently than the other staff at the school, including but not limited to being subjected to excessive supervision and being told by students and staff that Belton was "bad mouthing" Rice and generally damaging her reputation by questioning her performance and professionalism.

34.     Moreover, although Rice had never been reprimanded or otherwise disciplined in the seven years she had worked for the Board and had only ever received stellar performance evaluations, after filing her CHRO/EEOC complaint, she received, for the first time, two disciplinary "write-ups" in 2016, one of which was authored by Belton, one verbal warning, less than satisfactory performance evaluations, and a proposal that Rice begin seeing a "mentor" to improve her performance.

35.     Rice was also denied a pay increase that was given to the other two school counselors at Co-Op Arts & Humanities.

36.     In July 2016, Rice was involuntarily transferred to another high school. She was also demoted from lead counselor to counselor. In her previous position, Rice was the team leader, with responsibilities including leading a department comprised of two other counselors, a school psychologist, a school social worker, an English-language learner specialist, an independent study and seminar program coordinator, a speech and language pathologist and an administrative clerk; attending weekly leadership meetings on behalf of the guidance office; and generally managing the department. Now, she works under the supervision of a lead counselor who has just one year of experience as a school counselor.

37.     All of these actions – the discipline, the less than satisfactory performance evaluations, the failure to increase her salary, the transfer and demotion – were done in retaliation for Rice's complaints of sexual harassment and her subsequent decision to seek relief from the CHRO and EEOC. Rice filed a second complaint with the CHRO and EEOC, seeking relief for the retaliatory acts.

38.     Rice has suffered severe emotional distress, including depression and anxiety, that has manifested itself in panic attacks and sleeplessness and has necessitated treatment by a therapist and prescription medication. She has also suffered damage to her reputation as a result of Costanzo and Belton's comments to staff and students at Co-Op Arts & Humanities, as well as to employees of the Board.

**COUNT ONE:**
**Discrimination and Harassment in Violation of Title VII**
**of the Civil Rights Act of 1964 (against New Haven Board of Education)**

39.     Paragraphs 1 through 38 are hereby incorporated as if set forth fully herein.

40.     As set forth above, Costanzo engaged in a pervasive campaign of sexual harassment against Rice. When Rice repeatedly reported the harassment to Belton, the Title IX coordinator for Co-Op Arts & Humanities, Belton repeatedly failed to report the complaints as set forth in the Board's policies and procedures.

41.     Rice is an African-American woman and therefore is a member of two protected classes. Defendants were aware of her protected class status.

42.     Defendants discriminated against and harassed Rice on the basis of her race and her sex, in violation of Title VII.

43.     Rice has suffered damages as a result of defendants' conduct, including, but not limited to, lost wages, emotional distress, loss of enjoyment and damage to her reputation.

44.     Rice has also incurred attorney's fees and costs in pursuing this action.

## COUNT TWO:
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (against New Haven Board of Education)

45.     Paragraphs 1 through 38 are hereby incorporated as if set forth fully herein.

46.     Based on the foregoing, the Board retaliated against Rice because she engaged in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

47.     Rice engaged in activity protected under Title VII, and the Board had knowledge of that protected activity.

48.     The Board and/or its agents, including Belton, engaged in acts of retaliation against Rice shortly after learning of Rice's protected activity, including:

      a.     Issuing less than satisfactory performance evaluations;

      b.     Writing Rice up for alleged disciplinary infractions;

      c.     Failing to give Rice the raise that her fellow counselors received;

      d.     Transferring her to another school; and

      e.     Demoting her from lead counselor to counselor.

49.     Had Rice not reported her intention to pursue her legal rights by hiring an attorney and filing discrimination claims, the Board would not have taken the above actions.

50.     Rice has suffered damages as a result of the Board's conduct, including, but not limited to, lost wages, emotional distress, loss of enjoyment and damage to her reputation.

51.     Rice has also incurred attorney's fees and costs in pursuing this action.

## COUNT THREE:
### Retaliation in Violation of the Connecticut Fair Employment Practices Act ("CFEPA"),
### Conn. Gen. Stat. § 46a-60(a)(4) (against New Haven Board of Education)

52.     Paragraphs 1 through 38 are hereby incorporated as if set forth fully herein.

53.     Based on the foregoing, the Board retaliated against Rice because she engaged in protected activity in violation of the CFEPA.

54.     Rice engaged in protected activity under CFEPA, and defendants had knowledge of that protected activity. As described above, the Board and/or its agents, including Belton, engaged in acts of retaliation against Rice shortly after learning of Rice's protected activity, including:

   a.     Issuing less than satisfactory performance evaluations;

   b.     Writing Rice up for alleged disciplinary infractions;

   c.     Failing to give Rice the raise that her fellow counselors received;

   d.     Transferring her to another school; and

   e.     Demoting her from lead counselor to counselor.

55.     Had Rice not reported her intention to pursue her legal rights by hiring an attorney and filing discrimination claims, the Board would not have taken the above actions.

56.     Rice has suffered damages as a result of the Board's conduct, including, but not limited to, lost wages, emotional distress, loss of enjoyment and damage to her reputation.

57.     Rice has also incurred attorney's fees and costs in pursuing this action.

## COUNT FOUR:
## Violation of Title IX of the Civil Rights Act of 1964
## (against New Haven Board of Education)

58.     Paragraphs 1 through 57 are hereby incorporated as if set forth fully herein.

59.     As set forth above, Costanzo engaged in a pervasive campaign of sexual harassment against Rice. When Rice repeatedly reported the harassment to Belton, the Title IX coordinator for Co-Op Arts & Humanities, Belton repeatedly failed to report the complaints as set forth in the Board's policies and procedures.

60.     The Board is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs, and is further responsible for the acts and omissions of its employees.

61.   The Board is therefore responsible for its failure to investigate and properly respond to Rice's repeated complaints of sexual harassment by Costanzo.

62.   The Board's failure to investigate and properly respond to Rice's complaints violated its own policies and violated its obligations under Title IX.

63.   As a result of the Board's failures, Rice was subjected to sexual harassment in an educational program, in violation of Title IX.

64.   The Board's failures subjected Rice to sexual harassment that was pervasive, severe and objectively offensive.

65.   Rice suffered damages as a result of the Board's conduct, including, but not limited to, lost wages, emotional distress, loss of enjoyment and damage to her reputation.

## COUNT FIVE:
### Violation of Fourteenth Amendment Rights under 42 U.S.C. § 1983
### (against Costanzo and Belton)

66.   Paragraphs 1 through 65 are hereby incorporated as if set forth fully herein.

67.   Based on the foregoing, defendants discriminated against, harassed and retaliated against Rice.

68.   Rice has suffered damages as a result of defendants' conduct, including, but not limited to, lost wages, emotional distress, loss of enjoyment and damage to her reputation.

69.   Defendants' actions were motivated, at least in substantial part, by plaintiff's race and sex.

70.   Defendants Costanzo and Belton were personally involved in the discriminatory acts, and acted with deliberate indifference, reckless indifference and/or malice to Rice's rights.

71.   Defendants' discriminatory acts were done in their individual capacities in violation of the Equal Protection Clause of the Fourteenth Amendment.

72.     Defendants are liable to Rice for compensatory and punitive damages pursuant to Section 1983 of the Civil Rights Act of 1991, as amended.

<u>**COUNT SIX:**</u>
<u>**Intentional Infliction of Emotional Distress**</u>
<u>**(against Costanzo and Belton)**</u>

73.     Paragraphs 1 through 38 are hereby incorporated as if set forth fully herein.

74.     Based on the foregoing, Costanzo and Belton intentionally inflicted emotional distress upon Rice.

75.     Costanzo intended to inflict emotional distress upon Rice, or knew or should have known that emotional distress was the likely result of his continued sexual harassment of Rice, in the form of unwanted sexual advances and touching, as described above.

76.     Belton intended to inflict emotional distress upon Rice, or knew or should have known that emotional distress was the likely result of her failure to report Rice's complaints of sexual harassment at the hands of Costanzo and her threats and retaliation against Rice for making complaints, as described above.

77.     Costanzo's and Belton's conduct towards Rice was extreme and outrageous, in that it was beyond the bounds of decency tolerated in a civilized society.

78.     Costanzo's and Belton's conduct caused Rice to suffer emotional distress, and said emotional distress was severe, requiring Rice to see a therapist.

79.     Costanzo and Belton knew or should have known that their conduct would likely result in emotional distress for Rice.

80.     As a result of Costanzo's and Belton's conduct, Rice is also entitled to punitive damages.

## DEMAND FOR RELIEF

Rice hereby demands judgment against all defendants, and other relief, including, but not limited to the following:

1.      Injunctive relief, as deemed appropriate by the Court, to include the following:

  a.      An order that Rice's personnel file be cleared of any disciplinary actions and evaluations that were motivated by discrimination;

  b.      An order that Rice be reinstated to her position as lead counselor at a Board-operated school of her choosing; and

  c.      And order enjoining defendants from retaliating against Rice or any other individual who has participated in or otherwise cooperated in the prosecution and litigation of this case;

2.      Compensatory and economic damages, including, but not limited to, lost wages and benefits, emotional distress, and loss of enjoyment;

3.      Statutory and common law punitive damages against the individual defendants;

4.      Attorney's fees and costs;

5.      Interest; and

6.      Such other relief as this Court deems appropriate.

## JURY DEMAND

Rice hereby demands a trial by jury.

**PLAINTIFF,**
**CHANEL RENEE RICE**

By: /s/ Emily A. Gianquinto
    Emily A. Gianquinto (ct27846)
    EAG Law LLC
    437 Naubuc Avenue, Suite 107
    Glastonbury, CT 06033
    Tel: (860) 785-0545
    Fax: (860) 838-9027
    emily@eaglawllc.com