### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CHANEL RENEE RICE, | \* | CIVIL NO. 3:17-cv-00447-JCH |
| *Plaintiff* | \* | |
| | \* | |
| v. | \* | |
| | \* | |
| NEW HAVEN BOARD OF EDUCATION, | \* | |
| FRANK C. COSTANZO, in his individual | \* | |
| And official capacity, and | \* | |
| VAL-JEAN BELTON, in her individual | \* | |
| And official capacity | \* | |
| *Defendants* | \* | MAY 22, 2017 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### <u>MEMORANDUM IN SUPPORT OF</u>
### <u>MOTION TO DISMISS</u>

The Plaintiff, Chanel Renee Rice ("Rice" or "Plaintiff"), has brought this action against

the Defendant, New Haven Board of Education ("NHBE" or "Defendant"), for alleged violations

of Title VII of the Civil Rights Act of 1964, Title IX of the Civil Rights Act, as well as the

Connecticut Fair Employment Practices Act ("CFEPA"), codified as Conn. Gen. Stat. § 46a-60

et seq. In addition the Plaintiff has also brought a claim of intentional infliction of emotional

distress and presumably an equal protection claim under the Fourteenth Amendment of the

United States Constitution pursuant to 42 U.S.C. § 1983 against two employees of NHBE, Frank

C. Costanzo ("Costanzo") and Val-Jean Belton ("Belton").[1] Pursuant to 12(b)(1) and 12(b)(6) of

the Federal Rules of Civil Procedure, the Defendants respectfully request that the Plaintiff's

Complaint be dismissed in its entirety.

---

[1]NBHE, Costanzo, and Belton will be referred to collectively as "Defendants"

## I.   FACTUAL ALLEGATIONS

The Complaint begins by stating that the Plaintiff is an African-American female, while the NHBE is a board of education established pursuant to Connecticut General Statute § 10-240.[2] Costanzo is described as being employed, at all relevant times, by NHBE as the principal of Co-Op Arts & Humanities ("Co-Op").[3] Belton is described as being employed by the New Haven Board of Education "at all relevant times," as "either the assistant principal, interim principal or principal at Co-Op Arts & Humanities."[4] The Complaint then states in the same paragraph that Belton was a Title IX coordinator for the school as an assistant principal.[5] Both individuals are being sued in their individual capacity for "acting or failing to act within the scope, course and authority of their employment and their employer."[6]

The Complaint claims that all administrative remedies were exhausted prior to the filing of this lawsuit. It is alleged that the Plaintiff filed a claim "alleging violations of Title VII of the Civil Rights Act of 1964" with the Commission on Human Rights ("CHRO") as well as the Equal Employment Opportunity Commission ("EEOC") on December 8, 2015, without stating what these alleged violations are or if they even relate to the present suit.[7] The Plaintiff claims that a right to sue letter was issued by the EEOC, but the Complaint does not have a Right to Sue Letter attached.[8] The Complaint then states that the Plaintiff filed a separate claim again alleging unnamed "violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-58 et seq.," at some

---

[2] Comp. ¶2, 3
[3] Comp. ¶4
[4] Comp. ¶5
[5] Comp. ¶5
[6] Comp. ¶5
[7] Comp. ¶9
[8] Comp. ¶9

unspecified time.[9] Allegedly, the CHRO issued a release of jurisdiction related to this second claim on December 19, 2016, and the EEOC issued a right to sue letter on January 26, 2017, but none of these documents have been appended to the Complaint.[10]

The Complaint then lists a series of events in a section referred to as "Background." Many of these dates predate the 300 day filing time period for filing with either the CHRO or the EEOC. Even assuming that the relevant filing date was December 8, 2015, and not the second unlisted filing date, 300 days prior to December 8, 2015 would be February 11, 2015, so all events prior would be time-barred for the purposes of Title VII. The Complaint states that the Plaintiff began working as a school counselor in September 2014 at Co-Op.[11] At an unspecified time, it is alleged in conclusory language that Costanzo engaged in "sexual advances."[12] While it is alleged that "the frequency of Costanzo's conduct increased," it is not clear when this increase occurred or when the specific statements in paragraph 14 were made.[13] The alleged correspondence occurred between September 2014 and stretched into June 2015.[14]

On the date of October 10, 2014, the Plaintiff again makes several conclusory allegations about vague "inappropriate sexual comments."[15]  Four days later, the Plaintiff allegedly informed Belton "of Costanzo's inappropriate sexual advances."[16] It is noteworthy that the Complaint admits that that Belton instructed the Plaintiff to "block Costanzo from her cell phone and to stop all non-school communication."[17] On or about December 11, 2014, Costanzo allegedly "draped

---

[9]  Comp. ¶10
[10] Comp. ¶10
[11] Comp. ¶12
[12] Comp. ¶13
[13] Comp. ¶14
[14] Comp. ¶16
[15] Comp. ¶17
[16] Comp. ¶18
[17] Comp. ¶19

himself across Rice's lap," at a staff Christmas party.[18] On December 16, 2014, Belton allegedly had a meeting with Rice and Costanzo to discuss the incident, and Costanzo only admitted that he did not remember what occurred.[19]

At an unspecified time, an anonymous complaint was made to the Board's human resources department about Costanzo's behavior at the party, presumably putting the Board on notice for anything that could have reported about what allegedly happened at the Christmas party.[20] It is claimed that a further result of the anonymous report was that Damaris Rau, the executive director of schools for the Board, asked Belton to inquire with Rice about her comfort level in the school.[21] Significantly, it is not alleged that Belton failed to report on this conversation. The Plaintiff then paradoxically states that, "no investigation was conducted," after just previously asserting that Belton had conferred again with Rice.[22] It is no where asserted in the complaint why anyone from the Board needed to directly contact Rice for this investigation or what additional information would have been learned that was not already reported. In fact, the Complaint even alleges that all harassment stopped until an unmentioned point in February 2015, which may or may not have been before the cutoff time for Title VII.

At this point, the Complaint merely states there was an instance in February when Costanzo contacted Rice to discuss both work and "personal matters."[23] On another unspecified event, Costanzo merely entered the Plaintiff's room.[24] On June 10, 2015, Costanzo again entered the Plaintiff's office. Without even alleging harassment in this paragraph, the Plaintiff assumes

---

[18] Comp. ¶20
[19] Comp. ¶21
[20] Comp. ¶22
[21] Comp. ¶23
[22] Comp. ¶24
[23] Comp. ¶25
[24] Comp. ¶26

that this was somehow a cause for alarm and states that Costanzo "refused to leave."[25] As an accommodation, Belton told the Plaintiff that she could stay with her for the remainder of the day.[26] It is next alleged that Belton saw Costanzo leaving the Plaintiff's office, as if implying that the mere fact of a supervisor leaving an employee's office warrants comment.[27] Without stating the underlying reasons, the Plaintiff asserts that on July 15, 2015, Belton said she was "upset" that she received questions about Rice's harassment complaints.[28] Belton also allegedly advised that if there were still problems that the Plaintiff should "take it downtown."[29] Costanzo then resigned from his position in September of 2015 and Belton became principal at Co-Op.[30]

Months later, on or around September 2015, the Plaintiff stated that she would be speaking to an attorney, and Belton allegedly told her to "prepare for them to air your dirty laundry."[31] The Plaintiff filed an unspecified claim of discrimination with the CHRO and EEOC on December 8, 2015, but it is nowhere stated that any of the Defendants had actual or constructive knowledge of this filing.[32] On the contrary, all that is alleged is that Belton's behavior changed towards Rice after the filing of the Complaint, but Plaintiff's allegations are vague and conclusory in terms of how. For example, the Plaintiff alleges that she was "treated unfairly and differently than the other staff at the school, including but not limited to being subjected to excessive supervision and being told by students and staff that Belton was

---

[25] Comp. ¶27
[26] Comp. ¶27
[27] Comp. ¶28
[28] Comp. ¶29
[29] Comp. ¶29
[30] Comp. ¶30
[31] Comp. ¶31
[32] Comp. ¶32

'badmouthing' Rice and generally damaging her reputation by questions her performance and professionalism."[33]

At some point in 2016, the Plaintiff received a verbal warning and a less than satisfactory performance evaluation with a proposal for Rice to see a "mentor."[34] The Complaint fails to mention in what areas the Plaintiff was downgraded and who rated her. The Plaintiff states that she was "denied a pay increase" that was at some point given to two other school counselors at Co-Op, but there is insufficient information to know if they are similarly situated employees or if the Plaintiff had even applied for the raise.[35] Rice was then transferred "involuntarily" to a different high school in July 2016.[36] While the Plaintiff does allege she has less responsibility as a "counselor" instead of a "lead counselor", she does not allege that she receives less pay.[37] At some unnamed point in time subsequent to July 2016, the Plaintiff filed a claim for retaliation.[38]

## II.   ARGUMENT

### A.  Legal Standard

The Court should respectfully dismiss all counts of the complaint under either Rule 12(b)(1), lack of subject matter jurisdiction, or Rule 12(b)(6), failure to state a claim upon which relief can be granted. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction."*Allen v. Mattingly*, No. 10 CV 0667, 2011 WL 1261103, at *5 (E.D.N.Y. Mar. 29, 2011), aff'd, 478

---

[33] Comp. ¶33
[34] Comp. ¶34
[35] Comp. ¶35
[36] Comp. ¶36
[37] Comp. ¶36
[38] Comp. ¶38

Fed.Appx. 712 (2d Cir. 2012). "[T]he district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, it is important to remember that, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys.,Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

A Motion to Dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Motion to Dismiss, courts, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A plaintiff's allegations must contain, "enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B. All Counts Must Be Dismissed due to Immunity

The Court should dismiss all counts of the complaint on the basis of sovereign immunity, as even suits counts directed against Costanzo and Belton would result in compensation from NHBE. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." *Bloom v. Gershon*, 271 Conn. 96, 113, 856 A.2d 335 (2004). "Once [an issue of subject matter jurisdiction is] brought to the attention of the

court, regardless of the form of the motion, it must be acted upon." *Cahill v. Board of Education*, 198 Conn. 229, 238, 502 A.2d 410 (1985). "Under the Eleventh Amendment, states are immune from claims brought by private individuals in federal courts." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). In addition, state entities enjoy a general sovereign immunity apart from Eleventh Amendment immunity that is applicable whether the suit is in state or federal court. See *Alden v. Maine*, 527 U.S. 706, 713 (1999). "It is a well-established rule of the common law that a state cannot be sued without its consent." *Martinez v. Dept. of Public Safety*, 263 Conn. 74, 78, 818 A.2d 758 (2003). As explained in *Martinez*:

> A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends . . . The practical and logical basis of the doctrine is today recognized to rest on this principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. Id., 78-79.

A Board of Education like NHBE would naturally be included as a state agency, as C.G.S. §4-141 defines state agency to include "every department, division, board, office, commission, arm, agency and institution of the state government, whatever its title or function." Sovereign Immunity also protects officials from suit as well, since "[i]t is black letter law that a suit against a state official in his official capacity seeking damages is barred by the Eleventh Amendment." quoting *Jackson v. Johnson*, 30 F.Supp.2d 613, 618 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.).

The individual Defendants Belton and Costanzo also assert the doctrine of federal and state qualified immunity against Counts Five and Six. Under the doctrine of federal qualified immunity, "[a] government official is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [person] affected, or if he took the

action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [person]." *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). "A compensatory award will be appropriate only if the [government official] has acted with such an impermissible motivation or with such disregard of the [person's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

Under the doctrine of state qualified immunity, codified as Connecticut General Statutes § 4-165(a), "[n]o state officer or employee shall be personally liable for damage or injury not wanton, reckless or malicious, caused in the course of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." "[T]o overcome the immunity provided under § 4-165, a plaintiff must produce facts from which a reasonable person could infer that the defendant acted with the requisite mental state of recklessness and malice." *Manifold v. Ragaglia*, 102 Conn.App.315, 325, 926 A.2d 38 (2007). "Under the common law, [I]n order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . [Such conduct] is more than negligence, more than gross negligence." *Id.* at 324. In addition, "merely labeling alleged conduct as wanton, reckless or malicious is not sufficient. [I]n order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." *Shay v. Rossi*, 253 Conn. 134, 174-75, 749 A.2d 1147 (2000),

overruled on other grounds by *C.R. Klewin Northeast, LLC v. Fleming*, 284 Conn. 250, 932 A.2d

1053 (2007).

Finally, even in those circumstances where plaintiffs have demonstrated that immunity

has been waived through the consent of the sovereign, courts have disallowed plaintiffs to collect

on punitive damages against government defendants as the, "twin justifications for punitive

damages--punishment and deterrence--are hardly advanced when applied to a governmental

unit." *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 338, 452 N.Y.S.2d 347, 437 N.E.2d 1104

(1982). In such circumstances, punitive damages run, "contrary to sound public policy, because

such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was

being chastised." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263, 101 S.Ct. 2748, 69

L.Ed.2d 616 (1981). The same analysis has been applied to claims under CFEPA. See *Tomick v.

UPS,* 157 Conn. App. 312 (2015). The Plaintiff has failed to sufficiently allege any instance

where the Defendants acted recklessly with regards to the safety of the Plaintiff or even abuse

their position. Therefore, the Defendants respectfully request that all claims be dismissed on the

grounds of some form of immunity, at least to the extent that they seek punitive damages.

### C. Plaintiff's Counts of Discrimination, Hostile Work Environment, and Retaliation Must be Dismissed for Failure to Exhaust Administrative Remedies

All of Plaintiff's claims brought under Title VII and CFEPA must be dismissed, as the

Plaintiff has not met her burden of showing that she exhausted administrative remedies. A

Motion to Dismiss under Rule 12(b)(1) is appropriate where plaintiffs have failed to first exhaust

administrative remedies, and this failure constitutes a jurisdictional defect. *Lyons v. Litton Loan

Servicing LP*, 158 F.Supp.3d 211 (2016). For Title VII, Plaintiffs must first exhaust all of their

administrative remedies with the EEOC as a precondition to filing suit in federal court. *Ragone*

*v. A. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). There is a similar analysis for claims under CFEPA. See *Ware v. State*, 118 Conn.App. 65, 983 A.2d 853 (2009). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Brown v. Coach Stores, Inc.*, 163F.3d 706, 712 (2d Cir. 1998).

Thus, Courts will examine the sufficiency of the notice provided to the appropriate agency to examine whether it was sufficient to put a defendant on notice. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir. 1993). "Title VII's intended purpose to provide notice and encourage settlement of discrimination disputes would be defeated if litigation of a claim not previously presented to and investigated by the EEOC were permitted." See *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).

The Plaintiff has alleged she filed a claim for discrimination with the EEOC and CHRO, but has not stated if that claim was race-related or gender-related. The Plaintiff has also not alleged whether she brought a claim for hostile work environment under Title VII. While the Plaintiff may possibly argue that it is a reasonable inference that she filed her claim on the basis of both as an African-American woman, plaintiffs alleging Title VII claims have the burden of satisfying all preconditions to filing suit. A claim for race discrimination is not reasonably related to a claim of gender discrimination, and both are distinct from hostile work environment, which requires allegations of pervasive discrimination. Therefore, the Defendants respectfully

submit that the filing of claims of "violations of Title VII" is insufficient to satisfy the Plaintiff's burden to show that she exhausted administrative remedies.

### D. Plaintiff's Allegations Prior to February 11, 2015 are Time-Barred for Title VII Claims

Under Title VII, plaintiffs are barred from asserting claims that are not brought forward at the appropriate time as each claim is subject to its own 300 day time period to bring a charge. The Supreme Court has stated:

> A party, therefore, must file a charge within either 180 days or 300 days of the act or lose the ability to recover for it. . . . [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. [Because] [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act[,] [t]he charge . . . must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. *Nat'l R.R. Passenger Corp v. Morgan* 536 U.S. 101, 109-110, (2002).

As the Plaintiff initially filed her claim with the CHRO and the EEOC on December 8, 2015, all claims 300 days prior including February 11, 2015, would be time-barred. Therefore, these allegations cannot serve as examples of adverse employment actions or as evidence of a hostile work environment.

### E. Plaintiff's Counts Alleging Discrimination Must be Dismissed for Failure to State a Claim

In order to assert a claim for disparate treatment under Title VII or CFEPA, plaintiffs must satisfy the three-step, burden shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). Courts have stated that claims under CFEPA are examined under the same analysis as Title VII claims. *White v. Conn. Dep't of Children and Families*, 330F.App'x 7, 9 (2d Cir. 2009). To establish the elements of the prima facie case in *McDonnell Douglas*, the Plaintiff must show that: "1) she is a member of the prima facie class; 2) that she was qualified

for the position in question; 3) that she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993). Under the *McDonnell Douglas* test, the burden will only shift to the defendant to show a legitimate, nondiscriminatory reason, if the plaintiff is able to show the prima facie case. After the defendant has proffered some legitimate, nondiscriminatory reason for the adverse action, the burden then shifts back to the plaintiff to show the employer's stated reason was pretext. *McDonnell Douglas*, at 804.

An adverse employment action has been defined as a "material adverse change in the terms and conditions of employment," that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Typical examples of adverse action include, "termination of employment, a demotion evidenced by a decrease in wage or salary, a distinguished title, a material lose of benefits, significantly diminished material responsibilities, or other indices…unique to a particular situation."*McDowell v. North Shore-Long Island Jewish Health System, Inc.*, 839 F.Supp.2d 562 (2012) quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993). Many examples of employee discomfort in the workplace fail to rise to the level of adverse action. For example, increased scrutiny in most cases will not count as adverse action. *Uddin v. City of New York*, 427 F.Supp.2d 414, 429 (S.D.N.Y. 2006). In a similar way, negative reports and evaluations are in general not considered adverse employment action. *Hawana v. City of New York,* 230 F.Supp.2d 518, 528 (S.D.N.Y.2002). "The ultimate burden of persuading the trier of fact that the defendant intentional discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty.Affairs v. Burdine,* 450 U.S. 248, 252 (1981).

Courts that have examined whether an adverse action occurred under circumstances giving rise to an inference of discrimination, have looked to "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2dCir.2009). Courts have also looked to adverse actions taken against similarly situated employees to establish an inference of discrimination. See *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2dCir.2003). In addition, an inference of discrimination might be found "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).

The Complaint has failed to sufficiently allege a claim of discrimination for either race or gender, as the Plaintiff has not sustained an adverse employment action and cannot show a connection between an adverse employment action and discriminatory intent. First of all, examining solely the issue of race, the Complaint is woefully bare of any information about the race of any of the individuals mentioned aside from the Plaintiff herself, who is identified as an African American. The Plaintiff has not alleged that similarly situated employees were treated better than she was and she has not alleged any racially discriminatory comments that she even overheard. The Defendants thus respectfully urge that to the degree that Count One asserts a claim of race discrimination, that it be dismissed from the Complaint.

As to the issue of whether the Plaintiff experienced an adverse employment action, the Defendants assert that her Complaint fails to raise even one adverse employment action as construed by the second circuit. The Plaintiff has stated that she believes she was "treated

unfairly and differently than the other staff," that she was the subject of "excessive supervision" and that Belton made unspecified comments about her.[39] The Complaint also asserts that she received a write-up authored by Belton and a verbal warning from an unspecified source, as well as a recommendation that the Plaintiff see a "mentor" to improve her performance.[40] In addition, the Plaintiff asserts that others received a pay increase that she did not, that she was transferred to a different school, that she is now a counselor instead of a lead counselor, and that she works under a lead counselor with less experience.[41]

Many of these assertions are undated, and to the extent that they are, many are difficult to evaluate like Plaintiff's feeling that others receive different treatment than her. Excessive supervision is not an adverse employment action. Belton's comments to unnamed third parties, even assuming they were made, are vague, and mere insults do not qualify as adverse action under Title VII. Similarly, Plaintiff's verbal and written warnings are alleged without context and without date except that they occurred some time in 2016. Such mild discipline, unaccompanied by a material change in the workplace, cannot constitute an adverse employment action. Certainly a recommendation that she be given additional resources to improve in the form of a mentor cannot constitute adverse employment action either. Even the change of school and change of title do not constitute adverse action as it is not alleged that she even received less pay. While some of her management responsibilities shifted, that also does not signify a material change in employment as presumably she was doing some counseling work even as a lead counselor.

---

[39] Comp. ¶33
[40] Comp. ¶34
[41] Comp. ¶35

To the extent that the Complaint alleges gender discrimination, only those events after February 11, 2015 may be considered. Most of Costanzo's behavior seems to have taken place in or before 2014. Even the allegation that a conversation took place between the Plaintiff and Costanza at an unspecified date in February of 2015 describes the two as merely discussing "personal matters," which is not prohibited by Title VII.[42] An entire three months later, on June 10, 2015, the Plaintiff tells Costanzo to leave the office for an unspecified reason as the Plaintiff does not even allege what behavior or comment made her uncomfortable.[43] Two months after that, Costanzo resigned from his position at Co-Op, and the Plaintiff does not make further allegations of gender discrimination after that point. The record of events that could be deemed as happening subsequent to February 11, 2015 is too vague to make it plausible that the Defendants acted with discriminatory intent in violation of Title VII, the Fourteenth Amendment or even Title IX, assuming it applied.

### F.  Plaintiff's Counts of Retaliation Under Title VII and CFEPA Must be Dismissed for Failure to State a Claim

To establish a prima facie case of unlawful retaliation, a plaintiff must demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of the employee's participation in the protected activity; (3) the employer took action that a reasonable employee would have found materially adverse; and (4) a causal connection existed between the employee's protected activity and the adverse action taken by the employer." *Guarino v. St. John Fisher Coll.*, 321 Fed.Appx. 55, 58 (2d Cir. Apr.8, 2009).The *McDonnell Douglas* burden-shifting analysis governing employment discrimination claims also applies to retaliation claims. In the context of retaliation, "a plaintiff must show that a reasonable employee would have found

---

[42] Comp. ¶25
[43] Comp. ¶27

the challenged action materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." It is

worth noting too that Title VII will not protect employees from all minor instances of retaliation

"but from retaliation that produces an injury or harm." Id. at 64. In general, "empty verbal threats

do not cause an injury, and therefore are not materially adverse actions, where they are

unsupported by any other actions." *Vazquez v. Southside United Hous. Dev. Fund Corp.*, 2009

WL 2596490, *12 (E.D.N.Y. Aug. 21, 2009). Even asking an employee to resign when that

employee complained about the actions of other employees has not been found to be an adverse

action. *Harris v. South Huntington Sch. Dist.*, Docket No. 06-cv-3879 (DGT), 2009 WL 875538,

at *19 (E.D.N.Y. Mar. 30, 2009). "Title VII does not set forth a code of general civility and

minor annoyances in the workplace do not constitute actionable retaliation. Employees are only

protected from retaliation that produces an injury or harm." *Zelnik v. Fashion Inst. of Tech.*, 464

F.3d 217, 227 (2d Cir. 2006).

Plaintiffs may attempt to establish a casual connection between protected activity and

adverse employment action by using temporal proximity in the absence of direct evidence.

Admittedly, "[t]here is no bright line to define the outer limits beyond which a temporal

relationship is too attenuated to establish a causal relationship between [protected activity] and

an allegedly retaliatory action."*Ayantola v. Bd.Of Trustees of Technical Colleges*, 116

Conn.App.531, 539-40, 976 A.2d 784 (2009). However, the Supreme Court has stated that

"temporal proximity must be very close."*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273,

121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Furthermore, "in the Second Circuit, district courts

have consistently held that the passage of two to three months between the protected activity and

the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 275 (S.D.N.Y. 2007).

While filing with the EEOC and the CHRO is a protected activity, the Plaintiff has failed to make out a prima facie case for retaliation under Title VII or CFEPA. For instance, the Plaintiff has not even alleged in the Complaint that the Defendants knew of her protected activity, but has instead alleged that Belton's behavior changed after the first filing in December 8, 2015. For reasons previously stated, the Plaintiff has never sustained an adverse action. Additionally, the Plaintiff's Complaint has insufficiently alleged a connection between protected activity and anything resembling a possible adverse employment action. The Complaint contains no dates in terms of when Belton's behavior changed after the December 8, 2015 filing.[44] Similarly, the Plaintiff's verbal and written warnings have no date, which is relevant because the Second Circuit has held that even a separation in time of two to three months removes any inference of a retaliatory motive. The transfer and change of title to counselor almost happened *seven (7) months* after the initial filing on December 8, 2015. It is also important to remember that the Plaintiff was never terminated and has not alleged that she received a decrease in pay as a result of any of her protected activity. The Plaintiff cannot plausibly claim that she had an entitlement to the raise that was given to the other counselors and has not stated that she even applied for it. For these reasons, the Defendants respectfully submit that the Plaintiff has failed to allege a prima facie case under Title VII or CFEPA.

### G. Plaintiff's Counts of Hostile Work Environment Must be Dismissed for Failure to State a Claim

To the degree that the Plaintiff's first count could be construed as asserting a claim for hostile work environment under Title VII, the Defendants also assert that this claim too is legally

---

[44] Comp. ¶33

insufficient. A plaintiff must be able to show: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003). Such a claim will be dismissed unless there is sufficient evidence to indicate that the "workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2dCir.2003).

"[I]solated or episodic incidents involving racial slurs or other discriminatory conduct... do not rise to the level of severity or pervasiveness needed to support a hostile work environment claim." *Smith v. New Venture Gear, Inc.*, 319 Fed.Appx. 52, 56 (2d Cir. Apr.26, 2009). In addition, a "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). Courts consider the following factors when deciding if the plaintiff has sufficiently pled a claim of hostile work environment: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the employee's work; and (5) what psychological harm, if any, resulted." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir.1999).

The Defendants respectfully submit that the Plaintiff has failed to sufficiently allege a claim of hostile work environment. Not only has the Defendant failed to allege any instance of discrimination, but many of the events in the complaint are undated, making it impossible judge

how frequent the communications were. The most "severe" event in the Complaint involved one instance where Costanzo allegedly "draped himself" on the Plaintiff at a Christmas party.[45] Not only is this event time-barred, but it is also ambiguous and devoid of overtly threatening connotations. The Plaintiff further admits that "harassment ceased," after a meeting with the Plaintiff and Belton.[46] From this point on, the Plaintiff does not even qualify Costanzo as acting in a sexual way, and merely asserts that "personal matters" were discussed during one conversation in February 2015.[47] On a separate undated occasion, Costanzo merely walked into the Plaintiff's office and looked at her for an unspecified "period of time."[48] Belton's alleged "excessive supervision" and vague "badmouthing" is similarly insufficient to demonstrate that the Plaintiff's workplace was "permeated with discriminatory intimidation." The Defendants therefore respectfully submit that the Plaintiff has failed to sufficiently allege a count of hostile work environment and respectfully request that it be dismissed from the Complaint.

### H.  Plaintiff's Count of CFEPA Must be Dismissed in that it Seeks Double Recovery

The Defendant's Count Three sounding in CFEPA must be dismissed not only for its insufficiency, but also in that the presence of a claim under CFEPA and a claim under Title VII allows for the possibility of double recovery. It is admitted that, "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 67, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980) quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48-49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). However, the analysis between the two statutes is identical, and

---

[45] Comp. ¶20
[46] Comp. ¶25
[47] Comp. ¶25
[48] Comp. ¶26

plaintiffs are generally not allowed to recover twice for the same harm, as a plaintiff may have "only a single slice of the pie but the choice of the slice [is theirs]." *Freeman v. Package Machinery Co.,* 865 F.2d 1331 (1st Cir.1988).

The Second Circuit has stated that, "where only a single award of damages, not segregated into separate components, is made, the preferable rule, we think, is that the successful plaintiff be paid under the theory of liability that provides the most complete recovery." *Magee v. United States Lines, Inc.,* 976 F.2d 821, 822 (2dCir.1992). In a similar case, a plaintiff tried to allocate two separate forms of damages, compensatory and punitive, between Title VII and CFEPA. The court refused on the theory that, "[t]o perform such judicial surgery would contravene the policies underlying both the Congressional limitation on recovery under Title VII and the limitation on punitive damages under Connecticut law. Absent explicit authority from our Circuit Court permitting such allocation, we decline to do so." *Oliver v. Cole Gift Centers, Inc.,* 85 F.Supp.2d 109 (2000). While Title VII does nominally allow a Plaintiff to recover under an analogous state statute, as a practical matter, such a scenario would allow for a double recovery, which the law cannot allow.

## I.   Plaintiff's Count of Title IX Must be Dismissed as it Interferes with Title VII

The Court should dismiss Count Four sounding in Title IX as an employee of a federally funded education program cannot maintain a private right of action against an employer based on sex-discrimination under Title IX where remedies are available under Title VII. See *George v. Liverpool Central School District,* 2000 WL 1499342, *13 (N.D.N.Y.2000). Those courts, which have declined to recognize an employee's rights under Title IX, have done so out of recognition that a private right of action, "would disrupt the carefully balanced remedial scheme of Title VII ... [which] Congress intended to provide an exclusive avenue of relief except for remedies

already in existence at the time." *Vega v. State University of New York Board of Trustees*, 2000

WL 381430, *3 (S.D.N.Y. April 13, 2000). For this reason, the court in *Gardner v. St.*

*Bonaventure University*, 171 F.Supp.2d 118 (2001) granted a Motion to Dismiss a claim

sounding in Title IX. For this reason, the Defendants respectfully request that Title IX be

removed from the complaint.

### J.   Plaintiff's Count of Intentional Infliction of Emotional Distress Must be Dismissed for Failure to State a Claim

Under Connecticut law, to establish a claim of intentional infliction of emotional distress,

a plaintiff must plead that "(a) defendants intended to inflict emotional distress, or knew or

should have known that emotional distress was a likely result of their conduct; (b) defendants'

conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and

(d) the emotional distress sustained by the plaintiff was severe."*Appleton v. Bd. of Educ. of*

*Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000) citing *Petyan v. Ellis*, 200 Conn. 243,

253, 510 A.2d 1337 (1986). The term "extreme and outrageous" has been defined as "conduct is

defined as that which 'exceed[s] all bounds usually tolerated by decent society, of a nature which

is especially calculated to cause, and does cause, mental distress of a very serious kind."

*DeLaurentis v. New Haven*, 220 Conn. 225, 267, 597 A.2d 807 (1991)). "Generally, the case is

one in which the recitation of the facts to an average member of the community would arouse his

resentment against the actor, and lead him to exclaim, 'Outrageous!'"1 Restatement (Second),

Torts §46, comment (d), p. 73 (1965).

"Mere conclusory allegations are insufficient as a matter of law to support a cause of

action for intentional infliction of emotional distress."*Melfi v. City of Danbury*, 1993 WL

360650, at *2 (Conn.Super.Ct. Sept. 8, 1993)). "Conduct on the part of the defendant that is

merely insulting or displays bad manners or results in hurt feelings is insufficient to form the

basis for an action based upon intentional infliction of emotional distress." *Mellaly v. Eastman Kodak Co.*, 42 Conn.Sup.17, 19, 597 A.2d 846 (1991). Furthermore, suits for intentional infliction of emotional distress that occur in the workplace are held to an even higher standard, as the Appellate Court has written that:

> It is clear that such individuals reasonably should expect to be subject to routine employment-related conduct, including performance evaluations, both formal and informal; decisions related to such evaluations, such as those involving transfer, demotion, promotion and compensation; similar decisions based on the employer's business needs and desires, independent of the employee's performance; and disciplinary or investigatory action arising from actual or alleged employee misconduct. In addition, such individuals reasonably should expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like. Thus, it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. *Perodeau v. Hartford*, 259 Conn. 729, 757, 792 A.2d 552 (2002).

Connecticut cases have repeatedly shown that employees can experience significant conflict in the work place without it necessarily being grounds for an intentional infliction of emotional distress. For example, in the case of *Dollard v. Board of Education*, 63 Conn.App. 550, 551 (2001), the plaintiff, also a school psychologist, felt pressured by three of her supervisors to resign and alleged that they subjected her to hyper-scrutiny. In addition, the complaint also stated she was involuntarily transferred her to a different school, hired someone to replace her, and publically humiliated her. The court granted the Motion to Strike finding that the allegations were not extreme and outrageous enough to state a claim. Courts that have denied Motions to Strike for Intentional Infliction of Emotion Distress have done so on significantly more egregious facts than plead by the Plaintiff. In *McKelvie v. Cooper*, 190 F.3d 58, 60-61 (2d Cir. 1999), the Court denied a Motion to Strike for subjecting the plaintiff to repeated physical abuse and extreme sexual humiliation.

Without repeating all of the previously stated details of the Complaint, the Defendants assert that even when read in the light most favorable to the Plaintiff, the allegations of the Complaint fall short of a claim of Intentional Infliction of Emotional Distress in the workplace. The Plaintiff has also chosen language normally associated with negligence in Count Six, which alleges, "Costanzo and Belton *knew or should have known* that their conduct would likely result in emotional distress for Rice."[49] (emphasis added). Such a mental state has been held to be "talismanic language of a negligence cause of action." *Doe v. Advisors Healthcare Group*, Superior Court, complex litigation docket at Waterbury, Docket No. X01-CV02-0170300 (January 27, 2004, Sheedy, J.). In addition, vague messages on phones, heightened scrutiny, hypothetical rude comments, and only one instance of non-violent contact do not constitute a claim for intentional infliction of emotional distress that would shock the conscious of a reasonably objective person especially given the length of time between the various allegations. The Plaintiff was never terminated and remains a counselor working for the NHBE. Further, the Plaintiff seems to admit that the situation improved after Belton spoke to Rice and Costanzo as no allegations of a sexual nature are made after that point. As such, Plaintiff's Count Six sounding in Intentional Infliction of Emotional Distress should be dismissed in its entirety.

## III.    CONCLUSION

For all of the reasons previously stated, the Defendants respectfully submit that all of the counts of the Complaint should be dismissed either due to Rule 12(b)(1) or 12(b)(6).

---

[49] Comp. ¶79

DEFENDANTS,


By:___/s_____
     Robert J. Vontell III, ct30024
     Law Office of
     W. Martyn Philpot Jr. LLC
     409 Orange Street
     New Haven, CT  06511
     Tel: 203-624-4666
     Fax: 203-624-5050
     lawoffice@philpotlaw.net


## CERTIFICATION

I hereby certify that on this 22nd day of May 2017 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


___/s _____
Robert J. Vontell III